# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **TRACY BRUNER RUSSELL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10CV00005 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Hugh F. O'Donnell, Client Centered Legal Services, Inc., Norton, Virginia, for Plaintiff; Jordana Cooper, Assistant Regional Counsel, and Victor J. Pane, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner of Social Security (the "Commissioner").

I

The plaintiff, Tracy Bruner Russell, filed this action challenging the Commissioner's decision to deny her claim for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-434, 1381-1383d (West 2003 and Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

This is the plaintiff's second claim for disability insurance benefits. Russell's first claim for benefits was denied on October 25, 2006. She did not appeal the ruling. Russell filed this claim for benefits on March 30, 2007, alleging that her disability began August 1, 2004. Her claim was denied initially and upon review. On June 9, 2009, an administrative law judge ("ALJ") held a hearing at Russell's request in which both Russell, represented by a non-attorney representative, and a vocational expert ("VE") testified. The ALJ rejected Russell's claim. The Commissioner's decision became final when the Social Security Administration's Appeals Council denied Russell's request for review. Thereafter, Russell filed her Complaint with this court, objecting to the Commissioner's final decision. The issues have been briefed and argued, and the case is ripe for decision.

II

Russell was 43 years old at the time of the hearing below, making her a younger person under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). At the time of the hearing, Russell was living with her elderly mother and young daughter. Russell completed 11th grade in school and was one course shy of receiving her high school diploma. Her last employment was managing a convenience store and deli. As a manager at the store, she stood on her feet 11 to 12 hours daily. She left that job

in August of 2004 to move out of state with a boyfriend and has not returned to work since then. Russell claims that she is no longer able to work because of a combination of impairments including rheumatoid arthritis ("RA"), systemic lupus erythematasus ("SLE"), depressed immune system, left shoulder pain, left arm numbness, obesity, plantar fascitis, irregular menses, gastroesophageal reflux disease ("GERD"), shortness of breath, hypertension, depression, fatigue, anxiety, insomnia, and migraine headaches.

The ALJ found that the plaintiff had the following severe impairments: RA, SLE, obesity, GERD, hypertension, bipolar disorder type II, and depression. The ALJ found that none of the plaintiff's impairments, singly or in combination, met or medically equaled any of the agency's listed impairments. According to the ALJ, the plaintiff remained capable of simple, non-complex, light indoor work. The ALJ recognized that the plaintiff needed to alternate sitting and standing in place every half an hour and could perform only occasional postural maneuvers. The plaintiff could do no overhead lifting or climbing of ladders and could not work at heights or work with dangerous or vibrating machinery. Based on testimony of the VE, the ALJ determined that although Russell could not return to her past work, she could perform other work that exists with significant numbers within the national economy. Therefore, the ALJ concluded that Russell was not disabled.

3

Russell argues that the ALJ decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A). Because the agency denied the plaintiff's previous application on October 25, 2006, the issue here is whether the plaintiff was disabled between October 25, 2006 and the date of the ALJ decision, July 29, 2009. *See* 20 C.F.R. §§ 404.905, 416.1405 (2009).

In assessing claims the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is

4

determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985).

In accordance with the Act, I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the role of this court to substitute its judgment for that of the Commissioner. *See id*.

A

Russell argues that the ALJ erred by not deferring to the medical assessment of Russell's treating physician, Christopher Morris, M.D. Dr. Morris completed a

medical source statement on May 7, 2009. The statement said that RA "results in swollen, inflamed joints & severe fatigue" and therefore Russell could lift or carry a maximum of two to three pounds occasionally and could stand and walk a total of only one hour in an eight-hour workday. (R. at 566) He also wrote that Russell could sit for six hours during a workday, for two hours at a time, if she could get up and move around.

The plaintiff maintains that, pursuant to the "treating physician rule," Dr. Morris' opinion can be disregarded only if there is persuasive contradictory evidence. (Pl.'s Brief at 4 (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).) However, superceding regulations state that controlling weight is only afforded to a treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence on the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). When a physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, the opinion should be accorded significantly less weight. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig*, 76 F.3d at 590 (approving of the ALJ's rejection of the conclusory opinion of a treating physician). When controlling weight is not afforded to a treating source, the regulations lay out factors to be considered in determining the weight that is afforded to the opinion and require that the ALJ give good reasons for the weight

afforded. 20 C.F.R. §§ 404.1527(d), 416.927(d) (2009). The factors to be considered include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the medical opinion, the consistency of the opinion with the medical record, and whether the doctor is a specialist. *Id.*

The ALJ found that the report from Dr. Morris was not supported by his treatment notes or the rest of the evidence in the file. To determine whether Dr. Morris' conclusions had proper support, the ALJ looked at the medical evidence, including Dr. Morris' notes from the office visit immediately preceding the report. At that visit, in December 2008, Dr. Morris made only modest findings about Russell's joints. At Russell's last visit before that, in May 2008, Russell's joints were non tender and her fingers were warm without swelling. (R. at 562.). Notably, in response to a request on the medical source statement for medical findings that support the imposed limitations, Dr. Morris wrote only, "Rheumatoid arthritis results in swollen, inflamed joints & severe fatigue." (R. at 566.) He did not cite any medical findings specific to Russell or that explained why the specific limitations were imposed.

Although the plaintiff accuses the ALJ of misconstruing Dr. Morris' notes so that Russell's symptoms appear less severe, and Dr. Morris' conclusion appear more extreme (Pl.'s Brief at 5-7), the issues the plaintiff raises are not material. For

7

example, while the plaintiff validly points out that "fair" range of motion is likely worse than "good" range of motion (*id.* at 6), the distinction is not material to whether Dr. Morris' opinion was solidly rooted in the medical record. The plaintiff has not alleged that having a fair range of motion would require the limitations Dr. Morris outlined in his report. Furthermore, even if Russell did only have a fair range of motion that day, other records indicate that Russell had a full range of motion in her wrists, fingers, and hands during more recent appointments. (R. at 562, 564.) The ALJ's failure to fully recite Russell's medical history verbatim is not evidence that the ALJ improperly concluded that Dr. Morris' assessment was not supported by the evidence in the medical record. *See Poling v. Halter*, No. Civ.A. 1:00CV40, 2001 WL 34630642, at *2 (N.D. W.Va. Mar. 29, 2001).

Additionally, other medical evidence contradicts Dr. Morris' opinion. For example, Russell reported to Dr. Reed that she was exercising for an hour or more as of September 2007 (R. at 370) and was walking two to three miles a day as of November 2007. (R. at 366.) However, Dr. Morris indicated in the medical source statement that Russell could only stand or walk for a total of one hour in a day and only 30 minutes at a time. (R. at 566.)

Because nothing in the medical record supported the limitations Dr. Morris outlined in his report and other medical evidence contradicts Dr. Morris' conclusion, there was substantial evidentiary basis for the ALJ to afford less than controlling

8

weight to Dr. Morris' conclusion. In compliance with the regulations, the ALJ gave good reasons, outlined above, for rejecting the limitations. The ALJ did afford some weight to Dr. Morris' opinions, as was appropriate given that Dr. Morris is a specialist and had examined Russell many times over several years. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Dr. Morris' treatment notes, along with other evidence, were used to determine Russell's residual functional capacity. Based on all the evidence, the ALJ determined that Russell could do light work subject to several limitations. That determination was supported by substantial evidence and the ALJ did not err in failing to afford controlling weight to Dr. Morris' opinion.

B

Russell also argues that the ALJ erred by giving greater weight to non-examining psychologists than to Russell's mental health counselor and that the ALJ erred by failing to adequately develop the record regarding Russell's mental impairment. Russell met with social worker Crystal Burke, L.S.C.W., in May 2009. (R. at 586.) Burke believed Russell had depressive disorder and submitted a medical source statement opining that Russell had several significant limitations in functioning. (R. at 586-87.) The ALJ determined that Russell was severely impaired by depression but that Russell was not as limited by her depression as Burke indicated.

A social worker is not an acceptable medical source for evidence of impairment under the regulations. *See* 20 C.F.R. §§ 404.1502, 404.902, 404.1513(a), 416.913(a) (2009). Rather, evidence from a social worker is only appropriate to show the severity of an impairment and how it affects one's ability to work because a social worker is an "other source." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2009). Opinions of "other sources" need not be assigned controlling weight. *See Nocks v. Astrue*, 626 F. Supp. 2d 431, 446 (D. Del. 2009) (stating that a nurse practitioner is considered an "other source" whose opinion may be considered with respect to the severity of the plaintiff's impairment and ability to work but need not be assigned controlling weight); *Craig*, 76 F.3d at 590 (recognizing that a physical therapist is an "other source" whose opinion is afforded signficantly less weight); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 433 (N.D.N.Y. 2008) ("[P]lainly [the nurse practitioner] is not the equivalent of a treating physician whose opinions are accorded great deference under the regulations."); *Thomas v. Astrue*, No. CV 07-8040-PLA, 2009 WL 151488, at *3 (C.D. Cal. Jan. 21, 2009) (explaining that a social worker is not an "acceptable medical source" and that only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight). Therefore, Burke's opinions are not entitled to greater weight than opinions from other medical sources, such as psychiatrist Uzma Ehtesham, M.D. Dr. Ehtesham

assessed Russell's global assessment functioning and determined Russell had a score of 60, which is at the high end of the moderate range. (R. at 23).

Furthermore, the notes from Russell's meeting with Burke do not support the degree of disability that she claims. Burke stated that Russell appeared alert and oriented and her memory appeared intact. (R. at 586.) Burke's notes indicate that Russell denied having suicidal ideations but did have depression, crying episodes, feelings of hopelessness and worthlessness, and some problems with panic. (Id.) Nothing from Burke's observations indicates that Russell is poor at relating to co-workers, dealing with the public, interacting with supervisors, or understanding and carrying out instructions. Nevertheless, Burke indicated that Russell would have difficulty with these tasks. (R. at 587-88.) Two doctors reviewed Russell's file and determined that Russell's mental impairments were "nonsevere." (R. at 22-23.)

Additionally, the limitations indicated by Burke are undermined by other evidence on the record. For example, Burke indicated that Russell had poor concentration skills, poor ability to deal with the public, and poor ability to function independently. (R. at 588.) However, Russell cleans her house, washes dishes, does laundry, shops for groceries and clothing, drives a car, checks her daughter's homework, and takes her daughter to the pool in the summer. (R. at 45, 47, 49, 64, 182-83.)

Given this evidence, the record was properly developed and it was not inappropriate for the ALJ to reject Burke's opinion that Russell had poor mental abilities in most areas. Based on the evidence presented, the ALJ reasonably concluded that Russell had moderate difficulty functioning socially and concentrating and mild restriction on her activities of daily living.

C

The plaintiff faults the ALJ for not properly considering the combined effects of several secondary, nonexertional impairments such as headaches, depressed immune system, plantar fascitis, and irregular menses. (Pl.'s Brief at 10-11.) Russell asserts that her headaches qualify as severe because she treats her headaches with six to eight Goody's Powders each day and the condition has lasted longer than 12 months. (Pl.'s Brief at 11.) However, evidence in the record indicates that Russell's headaches were controlled by Topamax. (R. at 279 ("They are controlled by her current medication."), R. at 286 ("Patient states that Topamax helped her migraines. She is having fewer migraines than previously, and when she does have them, there is less pain.").)

To qualify as a severe impairment, the impairment must, alone or in combination with other impairments, significantly limit the claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921 (2009). The plaintiff has not shown that these conditions actually caused Russell any inability to perform basic

12

work-related activities. (*See* R. at 163 ("A. What are the illnesses, injuries, or conditions that limit your ability to work? rheumatoid arthritis and lupis [sic], depression."); *see also* Pl.'s Brief at 11 ("[T]he symptoms . . . could reasonably interfere with one's ability to perform work on a regular basis.").) Therefore, the ALJ's decision not to categorize them as "severe" was appropriate. Additionally, the ALJ properly considered secondary impairments in the residual functional capacity analysis.

D

Russell also asserts that the ALJ improperly discounted her credibility. The ALJ determined that Russell's statements about the intensity, persistence, and limiting effects of her symptoms were not fully credible. As evidence that the symptoms were not as limiting as Russell claimed, the ALJ referred to notes from Russell's doctors indicating that many of Russell's symptoms were controlled. Additionally, Russell told her doctor that she was walking two to three miles per day as of November 2007. (R. at 366.)

The ALJ did not improperly dismiss Russell's statements regarding her symptoms. The ALJ's determination regarding a claimant's credibility is afforded deference. *Craig*, 76 F.3d at 589. Nevertheless, the plaintiff argues that *Hatcher v. Sec'y Dep't of Health & Human Servs.*, 898 F.2d 21 (4th Cir. 1989), is relevant here. In *Hatcher*, the ALJ had improperly discounted the claimant's statement alleging that

13

he could not drive in 1970 was inconsistent with his statement nine years later that he renewed his driver's license but could not drive often or for long distances. *Id.* at 23-24. The court determined there that the statements were not inconsistent and therefore the ALJ had no evidence that the claimant was not credible. *Id.* at 24. There is no such error here.

The ALJ does have a duty of explanation when discounting a claimant's testimony. *Id.* at 23; *see also Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986) ("If the ALJ discounted [the claimant's] testimony about lifting and carrying heavy appliances, he needed both to say so and to explain why.") Here, that duty was satisfied when the ALJ said that Russell's statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible and recited several pieces of evidence, including notes from Russell's treating physicians, that undermined Russell's statements.

E

According to Russell, the ALJ also erred in failing to pose a hypothetical question to the VE that included all of Russell's limitations. (Pl.'s Brief at 13.) For a VE's opinion to be helpful, it must be in response to proper hypothetical questions which fairly set of all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

Here, the ALJ properly asked the VE to account for the limitations that the ALJ believed were supported by the evidence in the record. The ALJ asked the VE to consider whether jobs would be available for someone with the same age, education, and background as Russell if the individual was at a light exertional level subject to other limitations. (R. at 71.) The limitations she mentioned were those outlined in her Findings of Fact and Conclusions of Law. (R. at 26.) The VE responded that there are jobs meeting that hyopthetical profile. (R. at 71.)

The plaintiff appears to argue that the ALJ should have asked the VE about other limitations that were mentioned elsewhere in the record, such as in the medical source statement from Burke, but were not adopted by the ALJ. (Pl.'s Brief at 14.) Because substantial evidence supports the ALJ's decision regarding Russell's impairments, as discussed in part A and B, *supra*, the hypothetical question was appropriate. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

IV

For the foregoing reasons, the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: October 14, 2010

/S/ JAMES P. JONES
United States District Judge